UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LEAH SUE CHISM,

               Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

Case No. 6:16-cv-01106-AC

**OPINION AND ORDER**

**ACOSTA**, Magistrate Judge:

Leah Sue Chism ("plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by substantial

evidence, her decision is REVERSED and REMANDED for further proceedings.

\ \ \ \ \

## Procedural Background

Plaintiff filed her application for DIB on May 16, 2012, alleging disability beginning December 22, 2011. (Tr. 86–87.) The Commissioner denied her application initially and upon reconsideration. (Tr. 112–14, 121–25.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on September 17, 2014. (Tr. 38–85, 126–27.) After the hearing, the ALJ issued a decision finding plaintiff not disabled dated October 31, 2014. (Tr. 20–37.) The Appeals Council denied plaintiff's subsequent request for review on April 20, 2016, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7.) This appeal followed.

## Factual Background

Born in January, 1977, plaintiff was 37 years old at the time of the administrative hearing. (Tr. 38, 100, 203.) She graduated high school and has past relevant work experience as a laser technician, central supply worker, and health club manager. (Tr. 31, 65, 99, 239, 243–45.) Plaintiff alleges disability due to multiple chemical sensitivity, mixed connective tissue disease, and a head injury resulting in traumatic brain injury. (Tr. 87, 100.)

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the

Page 2 - OPINION AND ORDER

[Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### The ALJ's Findings

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 25.) At step two, the ALJ concluded plaintiff had the severe impairment of a respiratory disorder. (*Id.*) At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 26.)

The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," but with the following limitations:

> She should not climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme heat, humidity, and hazards. She should avoid even moderate exposure to pollutants.

(*Id.*) At step four, the ALJ found plaintiff was able to perform her past relevant work as a laser technician, central supply worker, and health club manager. (Tr. 31.) By finding plaintiff was able to do past relevant work, the ALJ determined plaintiff was not disabled; therefore, the ALJ did not proceed to step five. 20 C.F.R. §§ 404.1520(a)(4); 404.1520(f).

*Discussion*

Plaintiff alleges the ALJ erred by: (1) failing to provide a clear and convincing reason to reject her subjective symptom testimony; (2) improperly rejecting the medical opinions in the record; (3) improperly rejecting the lay testimony of Thomas Chism; (4) failing to find plaintiff's obesity and multiple chemical sensitivity to be medically determinable impairments; and (5) failing to find plaintiff's mixed connective tissue disease and traumatic brain injury to be severe impairments.

I.      Plaintiff's Subjective Symptom Testimony.

Plaintiff argues that this case must be remanded because the ALJ discredited plaintiff without providing a specific, clear and convincing reason for doing so. Plaintiff's Motion for Summary Judgment 16–20 (ECF No. 16) ("Pl.'s Br.").

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283–84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a

Page 5 - OPINION AND ORDER

sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's subjective symptom testimony "not fully credible" because: (1) plaintiff had a history of conservative treatment; (2) there was a lack of medical evidence to support plaintiff's allegations; (3) plaintiff exaggerated her symptoms and limitations; (4) plaintiff's activities of daily living were inconsistent with her alleged symptoms; and (5) plaintiff used a non-prescribed respiratory aide.

A.     *Conservative Treatment.*

First, the ALJ discredited plaintiff's symptom testimony because he found that plaintiff had a history of conservative treatment. (Tr. 29.) Evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted that "despite her alleged impairments, plaintiff testified that "[n]ot one doctor has prescribed [her] with anything for anything." (Tr. 29, 56.) The ALJ also found that despite claiming multiple chemical sensitivity, plaintiff "has not seen an immunologist or allergy specialist to do an allergy test." (Tr. 29.) Plaintiff argues that she could not take medications because of her multiple chemical sensitivity. However, other than plaintiff's claim that she avoids medications because she has "some allergic reactions" to "high doses" and her claim that she has had allergic reactions to dyes, there is no evidence in the record that she cannot take medications. (Tr. 438, 443.) Indeed, the record reveals that plaintiff has no documented allergies

to medications. (Tr. 329.) (Treatment notes reflect that plaintiff has no known drug allergies.); (Tr. 435.) (same); (Tr. 631.) ("No reported drug allergies.")

Plaintiff further argues that she had been prescribed medications in the past. Although plaintiff once was prescribed Meclizine for dizziness and Hydroxyzine for itching, this revelation hardly serves to bolster plaintiff's credibility, considering it was plaintiff who testified she had never been prescribed "anything for anything." (Tr. 56, 333, 473.) Furthermore, conservative treatment can be demonstrated through a failure to seek aggressive treatment. *Tommasetti*, 533 F.3d at 1039. Such common, minimally invasive medications for dizziness and itching are not indicative of aggressive treatment for allegedly disabling multiple chemical sensitivity.

Plaintiff finally argues that she was receiving sufficiently aggressive treatment from Naturopathic Doctor ("N.D.") Robel. Plaintiff explained that her daily supplements, dietary restrictions, and unprescribed air filter device are sufficient for treating her symptoms. Pl.'s Br. 17–19. However, a favorable response to such minimal treatment is consistent with conservative treatment. *Tommasetti*, 533 F.3d at 1040. Moreover, plaintiff contends that nothing can be gained from seeing an allergist because her multiple chemical sensitivity merely results in allergy-like reactions and she has gotten relief from her air filter. Pl.'s Br. 18–19.

For these reasons, the ALJ appropriately identified plaintiff's conservative treatment as a valid reason to discredit plaintiff's symptom testimony.

B.    *Lack of Medical Evidence.*

Next, the ALJ found there was a lack of objective medical evidence to support plaintiff's alleged impairments. The ALJ noted that plaintiff alleged back pain, severe arthritis, and the need to lie down for the remainder of the day after standing two hours. The ALJ found plaintiff's

Page 7 - OPINION AND ORDER

allegations were not well supported because Dr. Ho observed normal gait, full muscle strength, and no evidence of muscle spasms; Dr. Wei observed normal strength and reflexes; and Dr. Ito observed intact coordination and full power in the upper and lower limbs. (Tr. 28–29.) However, a normal gait, full muscle strength, and normal reflexes are not necessarily inconsistent with plaintiff's alleged back pain, arthritis, and fatigue. Furthermore, plaintiff's claims of fatigue were supported by Dr. Ho's finding that plaintiff's ability to stand and walk was limited by fatigue. (Tr. 406.)

The ALJ also found plaintiff alleged difficulty concentrating and poor memory, but her cognitive testing indicated she had average intellectual functioning and good verbal and non-verbal skills. (Tr. 29, 266, 270–71, 412.) The ALJ further noted that the consultative psychological examiner found plaintiff had no memory deficits or impairments. (Tr. 29, 411–12.) However, plaintiff's average intellectual functioning and good verbal skills do not meaningfully address her concentration or memory. Furthermore, the ALJ ignored both of plaintiff's Trails scores, which fell outside the normal range to a significant degree. (Tr. 413.) The ALJ also failed to note Dr. Toews's findings that plaintiff's working memory was in the "Low Average range" and that her thinking is "scattered and loose." (Tr. 410–11.) The ALJ also failed to address Dr. Ho's determination that plaintiff has "memory loss and concentration problems." (Tr. 406.) Therefore, medical evidence in the record supports plaintiff's claims that she has difficulty concentrating and poor memory.

The ALJ additionally found that plaintiff alleged constant swelling in her hands, but treating Family Nurse Practitioner ("FNP") Galey reported plaintiff's hands had normal range of motion, normal sensation, and *no swelling*. (Tr. 28–29, 462.) Indeed, despite plaintiff's report that her hands were constantly swollen, it appears that none of her medical providers ever observed swelling in her hands.

Plaintiff urges that it is improper for the ALJ to reject subjective symptom testimony solely because it is not fully supported by the objective evidence. Pl.'s Br. 19 (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)). Although, a lack of medical evidence cannot serve as the sole reason for discrediting plaintiff's testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Furthermore, here, the ALJ did not reject plaintiff's symptom testimony solely based on lack of support, because plaintiff's claims of swollen hands, in addition to lacking support, were directly contradicted by the medical record. (Tr. 462.) Therefore, the ALJ appropriately considered plaintiff's unsupported allegations about hand swelling in making his credibility determination.

C.      *Exaggerated Symptoms.*

Next, the ALJ discredited plaintiff's symptom testimony because he found the "record includes evidence suggesting the claimant exaggerated symptoms and limitations." (Tr. 30.) Plaintiff's exaggerated statements constitute a clear and convincing reason for rejecting her subjective symptom testimony, because in making a credibility determination the ALJ may consider inconsistent statements and other testimony that appears less than candid. *Smolen*, 80 F.3d at 1284. The consultative psychological examiner determined that plaintiff's answers on the MMPI-2 exam suggested, "she may have very deliberately sought out and endorsed the most highly unusual psychopathological items purposely." (Tr. 413.) Dr. Toews concluded the "profile is not interpretable" and "[i]t may be suggestive of malingering." (*Id.*). Dr. Toews even added a note in his report, stating "it raises questions of her credibility." (*Id.*)

Plaintiff correctly notes that unless an ALJ makes a finding of malingering, the ALJ can discredit plaintiff's testimony only for clear and convincing reasons. *Garrison v. Colvin*, 759 F.3d

Page 9 - OPINION AND ORDER

995, 1014–15 (9th Cir. 2014). However, the fact that the ALJ did not make a finding of malingering does not mean plaintiff's documented symptom exaggeration is not a clear and convincing reason for rejecting plaintiff's symptom testimony. An ALJ may discredit for testimony "that appears less than candid," and here, Dr. Toews determined that plaintiff's responses appeared less than candid. *Smolen*, 80 F.3d at 1284 (Tr. 413.) Thus, the ALJ's rationale is valid.

### D.     *Activities of Daily Living.*

Next, the ALJ found that plaintiff's "daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 29.) Activities of daily living that conflict with a claimant's testimony can provide a clear and convincing reason for rejecting the claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). After reciting a general finding that plaintiff's activities are not as limited as would be expected, the ALJ merely listed plaintiff's activities, including: travelling on foot, shopping in stores once a month, preparing meals, knitting, occasionally going door-to-door to discuss the Bible, and independently performing basic self-care. (Tr. 29, 268–70, 410.) In order to properly discredit a claimant, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Here, the ALJ never indicated which symptom testimony was contradicted by plaintiff's activities. Therefore, the ALJ's finding was insufficient as a matter of law.

### E.     *Use of a Non-Prescribed Aide.*

Finally, the ALJ considered plaintiff's use of a motorized environmental air filter device which was not prescribed. Plaintiff wore the device at her hearing and at every appointment with her doctors. (Tr. 50–52, 329, 338, 402, 408, 435, 439, 443, 462, 632.) In discrediting a plaintiff's

testimony, an ALJ may consider the use of a non-prescribed aide, such as a wheelchair or a cane. *See Chaudhry v. Astrue*, 688 F.3d 661, 671–72 (9th Cir. 2012). Plaintiff argues that the use of the respiratory device should not be a reason to discredit her symptom allegations because she was diagnosed with multiple chemical sensitivity. Plaintiff's Reply Brief 10 (ECF No. 25) ("Pl.'s Reply Br."); Tr. 406.) Although plaintiff was diagnosed with multiple chemical sensitivity, the doctor who diagnosed her neither prescribed nor recommended the use of the air filter. The plaintiff further argues that because the ALJ included in the RFC a limitation to avoid "even moderate exposure to pollutants" the ALJ should not discredit plaintiff for using the air filter. Pl.'s Reply Br. 10; (Tr. 26.). The fact that the ALJ indicated plaintiff should avoid moderate exposure to pollutants, does not mean the ALJ accepted that plaintiff's air filtration device was necessary. Notably, the ALJ did not include a limitation requiring accommodation of such a device. Therefore, the ALJ did not err by considering plaintiff's use of a non-prescribed aide in making the credibility determination.

Although the court does not find plaintiff's activities of daily living to be a clear and convincing reason for rejecting plaintiff's symptom testimony, this error is harmless because plaintiff's conservative treatment, exaggerations about symptoms, use of an unprescribed aide, and the lack of medical evidence, constitute clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.) In sum, the ALJ provided clear and convincing reasons for discrediting plaintiff's symptom testimony.

II.     Medical Opinion Evidence.

Plaintiff argues the ALJ erred in rejecting the medical opinion evidence of Dr. Marie Ho, Dr. Jay Toews, and Heidi Robel. Pl.'s Br. 06–12.

*A.     Acceptable Medical Opinions.*

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

1.     Dr. Marie Ho, Examining Physician.

Dr. Ho issued a medical opinion on September 22, 2012, based on her clinical examination of plaintiff and her review of plaintiff's medical records. (Tr. 401–07.) In her report, Dr. Ho opined plaintiff had the following limitations: (1) she could only stand or walk for a maximum of three to four hours of an eight-hour workday; (2) could only sit for a maximum of four hours of an eight-hour workday; (3) was limited to lifting a maximum of 10 pounds; (4) and was precluded from working around chemicals, dust, fumes, and gases. (*Id.*) Dr. Ho additionally noted plaintiff had a history of traumatic brain injury which caused memory loss and concentration problems and could "limit her ability to function in the workplace." (Tr. 406.)

The ALJ gave Dr. Ho's opinion little weight based on his finding that it was "inconsistent with the doctor's clinical findings" and his determination that it "appear[ed] the doctor relied heavily on the claimant's subjective report of symptoms and limitations, which are not fully credible for the reasons stated in this decision." (Tr. 30.)

In her clinical findings, Dr. Ho noted there was no evidence of lumbar paravertebral muscle spasms or tenderness, joint deformities, crepitus, effusion or trigger points. (Tr. 30, 405.) Dr. Ho also noted plaintiff had full muscle strength, intact sensation, and normal reflexes. (Tr. 30, 405.) The opinion of an examining doctor, "even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). Here, the ALJ merely summarized Dr. Ho's opinion, listed some of the clinical findings, and asserted there were inconsistencies; however, he failed to specify what was inconsistent. (Tr. 30.) Furthermore, none of the clinical findings cited by the ALJ contradict Dr. Ho's opinion. Dr. Ho noted that plaintiff's standing, walking, and sitting limitations were "due to fatigue." (Tr. 406.) As plaintiff points out, Dr. Ho's opinion was "not based on [plaintiff's] strength, reflexes, or the presence or absence of muscle spasms or tenderness, which is what the ALJ recites as reasons to disregard her findings." Pl's Br. 07; (Tr. 30.) Thus, the purported inconsistency with her clinical findings was not a legitimate reason for rejecting Dr. Ho's opinion.

When doctors' "opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotations omitted). Although the ALJ asserted that Dr. Ho relied heavily on plaintiff's subjective symptom reports, the ALJ did so without explaining any basis for that conclusion. (Tr. 30.) An ALJ must "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" SSR 06-03p at *6; *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). Here, the ALJ did not provide sufficient reasoning.

Moreover, even if Dr. Ho did rely to a limited extent on plaintiff's subjective reports, Dr. Ho also performed her own examination of plaintiff and reviewed plaintiff's medical records as well as test results. (Tr. 401–07.) "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinions." *Ghanim*, 763 F.3d at 1162. The ALJ failed to identify any evidence indicating Dr. Ho relied more heavily on plaintiff's self-reports than on her own clinical observations, therefore, this was not a legitimate reason to reject Dr. Ho's opinion.

The Commissioner additionally argues the ALJ properly rejected Dr. Ho's opinion by crediting Dr. Staley's opinion over hers. *Garrison*, 759 F.3d at 1012 (An ALJ may "explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another."). The Commissioner's argument is unavailing for several reasons. First, the ALJ never made this argument. The ALJ never indicated he was relying on Dr. Staley's opinion to reject Dr. Ho's opinion. Thus, the Commissioner's contention is *post hoc*, which the Court may not consider in affirming an adverse decision. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Second, although the Commissioner noted the ALJ gave great weight to Dr. Staley's opinion because it was consistent with the clinical findings of Dr. Wei and Dr. Ito, the Commissioner failed to acknowledge that the ALJ also found Dr. Staley's opinion to be consistent with Dr. Ho's clinical findings. (Tr. 31.) Third and finally, Dr. Staley's non-examining opinion, alone, is insufficient to reject Dr. Ho's examining opinion because "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies

the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. Therefore, the ALJ failed to provide specific, legitimate reasons to reject Dr. Ho's opinion.

2.      Dr. Jay Toews, Examining Psychologist.

Plaintiff argues that although the ALJ properly gave great weight to Dr. Toews' GAF score of 50-64, the ALJ failed to account for this finding in the RFC. Pl.'s Br. 11. Citing to an online summary of GAF scores, plaintiff asserts that a GAF score of 50 defines a level of functioning incompatible with keeping a job, or at least it would be unlikely that she could work on a regular and continuing basis of 8 hours per day, 5 days per week. Pl.'s Br. 11–12. Despite plaintiff's assertion, the language she cited indicates inability to keep a job is just one of a number of impairments that could be found in a person with a GAF score at that level. Pl.'s Br. 11 ("Serious symptoms (e.g., suicidal ideations, severe obsessional rituals, frequent shoplifting) OR serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job)").

Plaintiff next argues that the ranged GAF score is not a matter of interpretation, but a matter of fact. Pl.'s Reply Br. 04. Plaintiff urges that in accepting the GAF score, the ALJ was required to take into account the fluctuating nature of plaintiff's functioning, accounting for the low end as well as the high end. (*Id.*) Taking into account the fluctuations of plaintiff's GAF score, even at the lowest end, an inability to maintain employment is just one of several possible manifestations. The fact that plaintiff's low GAF score could indicate a functioning level that might manifest itself through an inability to maintain employment, does not constitute a finding by the doctor that plaintiff's impairment would interfere with her ability to maintain employment. Furthermore, the reliability of GAF scores, in evaluating a person's ability to function, is in doubt. The GAF score

was omitted from the fifth edition of the Diagnostic & Statistical Manual of Mental Disorders "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-V") 16 (5th ed. 2013). The ALJ was not required to account for every potential functional limitation that could accompany a particular GAF score.

Finally, plaintiff argues that the "ALJ improperly found Dr. Toews[] only gave rule-out diagnoses." Plaintiff urges that the ALJ failed to address Dr. Toews's finding that plaintiff had "odd personality traits" under Axis II and that her personality was "one of the strangest profiles I have seen in the course of my practice." Pl.'s Br. at 12; (Tr. 413.) The ALJ correctly noted that Dr. Toews did not diagnose plaintiff with any mental impairment. Although Dr. Toews did indicate plaintiff had "odd personality traits," such a determination does not constitute a clinical diagnosis of a mental impairment. In fact, Dr. Toews reported that plaintiff's "profile was not interpretable[.]" Therefore, the ALJ did not err in his analysis of Dr. Toews's opinion.

### B. Non-Acceptable Medical Sources.

#### 1. Dr. Heidi Robel, Treating Naturopath.

Plaintiff alleges that the ALJ improperly rejected the opinion of N.D. Robel, an "other source." Pl.'s Br. 08–10.

Evidence from an acceptable medical source is used to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1521. Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502. Evidence from "other sources," including, but not limited to, "nurse practitioners, physician assistants, licensed clinical social

workers, naturopaths, chiropractors, audiologists, [and] therapists," may also be used to show the severity of a claimant's impairments and how they affect his ability to work. SSR 06-03p at *2. In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111.

On November 29, 2012, N.D. Robel opined that plaintiff had a difficult time being in public places and would struggle in most work environments. (Tr. 577.) Then, on January 17, 2013, N.D. Robel noted that even "a small amount of exposure" to pollutants could cause "debilitating headaches, muscle pains[,] and confusion." (Tr. 444.)

The ALJ gave N.D. Robel's opinion "little weight," finding that she was not an acceptable medical source. (Tr. 30.) Although N.D. Robel is not an acceptable medical source, this is not, in and of itself, a germane reason for rejecting her medical opinion. *See* SSR 06-03p.

Next, the ALJ noted that he included environmental restrictions in the RFC to account for plaintiff's chemical sensitivity. (Tr. 30.) However, the ALJ's limitation in the RFC stated only that plaintiff "should avoid even moderate exposure to pollutants." (Tr. 26.) Such a limitation failed to address N.D. Robel's findings that "even a small amount of exposure" could cause "debilitating headaches, muscle pains[,] and confusion." (Tr. 444.)

Finally, the ALJ found N.D. Robel relied heavily on plaintiff's subjective report of symptoms. (Tr. 30.) However, as plaintiff correctly points out, the ALJ failed to supply any reasoning to support his conclusion. Pl.'s Reply Br. 05. The Commissioner argues the ALJ's opinion is supported by substantial evidence because N.D. Robel's letter and treatment notes essentially repeated plaintiff's claims. Defendant's Brief 09–10 (ECF No. 20) ("Def.'s Br."). A thorough review of N.D. Robel's treatment notes reveals that she never documented objective

evidence of plaintiff's purported symptoms, therefore, N.D. Robel must have relied "to a large extent" on plaintiff's self-reports and "not on clinical evidence." *Ghanim*, 763, F.3d at 1162. Nevertheless, plaintiff urges that N.D. Robel relied on her observations that plaintiff used an air purifier mask and refused to sit on an office chair. (Tr. 439, 577.) This reasoning is unpersuasive. Plaintiff's use of the air purifier mask and refusal to sit in the office chair were based on plaintiff's subjective beliefs about her symptoms, rather than objective medical evidence. N.D. Robel's reliance on her observations of such behavior is the functional equivalent of relying on plaintiff's subjective symptom testimony. Therefore, the ALJ provided a germane reason for rejecting N.D. Robel's opinion.

III.     Lay Testimony.

Plaintiff alleges the ALJ improperly rejected the lay testimony of plaintiff's husband, Thomas Chism. Pl.'s Br. 10–11. The ALJ must provide "germane reasons" for rejecting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Mr. Chism testified that as a result of plaintiff's concussion, she has the same conversations over and over because of her memory problems; has difficulty finding places that she has been to before; is unable to follow instructions; has problems concentrating; gets confused with handling money; and has difficulty completing even basic tasks. (Tr. 71–73, 258, 262, 265.)

The ALJ found that Mr. Chism's "statements may reflect his personal observations of the claimant" but "the medical evidence of record does not support finding greater limitations than those set forth in the above residual functional capacity." (Tr. 31.) The ALJ did not provide any reasons for rejecting Mr. Chism's testimony, he merely stated his conclusion. Although the ALJ needed only provide a germane reason to reject the lay testimony, he failed to provide *any* reason. The

Page 18 - OPINION AND ORDER

Commissioner argues the ALJ did provide a germane reason to discount Mr. Chism because the ALJ reasonably relied on the medical evidence. Def.'s Br. 20. ("in light of [the ALJ's] careful analysis of the medical record, [p]laintiff fails to identify any error.") Reliance on the medical record may support a reason for rejecting lay testimony, but it is not itself a separate reason. Moreover, although an ALJ may discredit lay testimony if it conflicts with medical evidence, it cannot be rejected merely based on a lack of support. *See Lewis*, 236 F.3d at 511(noting an ALJ may discount lay testimony that "conflicts with medical evidence") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). Accordingly, the ALJ improperly rejected Mr. Chism's lay testimony.

IV.    Medically Determinable Impairments.

Plaintiff argues the ALJ erred in failing to find plaintiff's obesity and multiple chemical sensitivity were medically determinable impairments. Pl.'s Br. 13–14. To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs — the results of 'medically acceptable clinical diagnostic techniques,' such as tests — as well as symptoms." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms, a diagnosis, or a medical opinion is not enough to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1521; SSR 96-4p.

   *A.    Obesity.*

Plaintiff first alleges the ALJ erred in failing to find her obesity to be a medically determinable impairment. Pl.'s Br. 13–14. Dr. Wei noted that plaintiff was dealing with obesity. (Tr. 563.) A BMI of 30.0 – 34.9 qualifies as obese. SSR 02-1p at *2. The medical record establishes that plaintiff's obesity is a medically determinable impairment because plaintiff consistently presented with a BMI over 30.0. (Tr. 562, 564, 567, 629.) The ALJ erred because he

Page 19 - OPINION AND ORDER

never addressed plaintiff's obesity. (Tr. 23–32.); *Ghanim*, 763 F.3d at 1166 ("In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe."). Plaintiff argues this error was harmful because the ALJ determined in the RFC that plaintiff was capable of work at all exertional levels, including very heavy work. (Tr. 26.) The Commissioner contends that the error was harmless because it was "inconsequential to the ultimate nondisability decision." *Molina*, 674 F.3d at 1115 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In the RFC, the ALJ determined plaintiff was capable of work at all exertional levels, but the Commissioner argues, even if this was an error, it was harmless because the ALJ specifically found that plaintiff could perform past relevant work that was only light or medium. (Tr. 31.)

Nevertheless, the Social Security Regulations provide that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." SSR 02-1p at *6. The ALJ failed to make such an evaluation in this case. Had the ALJ properly conducted such evaluation, he may have found that plaintiff's obesity would have increased the severity of her other impairments. Thus, the error was not harmless because it cannot be said that the error was "inconsequential to the ultimate nondisability decision." *Molina*, 674 F.3d at 1115.

B. *Multiple Chemical Sensitivity.*

Plaintiff asserts the ALJ erred in failing to find plaintiff's multiple chemical sensitivity to be a medically determinable impairment. Pl.'s Br. 14. Dr. Ho and Dr. Wei both diagnosed plaintiff with multiple chemical sensitivity and plaintiff cites to a number of her purported symptoms. Pl.'s Br. 14; Pl.'s Reply Br. 07–08; (Tr. 406, 436, 443–44, 459.) However, plaintiff fails to demonstrate

that her multiple chemical sensitivity is a medically determinable impairment because she relies completely on medical diagnoses and her own symptom testimony, rather than objective medical evidence derived from "medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1521 (The Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

To show that her allergic reactions were supported by medical evidence, plaintiff points to evidence that she had to avoid certain chairs, had allergic reactions to fabric softener and the dye in ibuprofen, and had a wide range of symptoms caused by exposure to chemicals. Pl.'s Br. 14; Pl.'s Reply Br. 07. The claims about her allergic reactions are not supported by the objective record, but instead appear to be based entirely on her own reports. Dr. Ho merely noted that plaintiff "was careful to avoid sitting on a chair, covered with a material, *which she considered toxic*." (Tr. 402.) (emphasis added). Plaintiff's allergic reaction to the fabric softener was merely an allegation plaintiff made over the phone that the fabric softener on the nurse's scrubs was too strong. (Tr. 459.) Finally, plaintiff's list of symptoms triggered by environmental exposure purportedly include "migraines, myalgia with muscle weakness and spasm, mood swings with irritability, confusion, coughing, slurred speech, fatigue, nausea, flatulence and swollen abdomen and hands." (Tr. 443.) However, the existence of these symptoms are not supported by any medical signs or laboratory findings. (Tr. 443.) Plaintiff was never tested by an immunologist or allergy specialist. (Tr. 436, 563.) Thus, the ALJ properly determined plaintiff's multiple chemical sensitivity was not a medically determinable impairment because the record was entirely devoid of signs or laboratory findings to substantiate the alleged impairment. *Ukolov*, 420 F.3d at 1005; SSR 96-4p at *1.

V.    Severe Impairments.

Plaintiff also argues the ALJ erred because he did not find her mixed connective tissue disease and traumatic brain injury to be "severe" impairments at step two of the sequential analysis. Pl.'s Br. 15–16. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.' " *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

*A.    Mixed Connective Tissue Disease.*

Plaintiff alleges the ALJ erred in failing to find her mixed connective tissue disease to be a severe impairment. Pl.'s Br. 16. Plaintiff first argues the ALJ failed to account for plaintiff's positive RNP autoantibody workups. (Tr. 356, 500.) The ALJ did, however, note that the two most recent RNP autoantibody workups from 2013 and 2014 were negative. (Tr. 452.) Furthermore, the positive workups contained the caveats that RNP autoantibodies "are also found in about 2% of the normal population," "[a]utoimmune diseases cannot be diagnosed by serology alone," and "[s]pecific clinical criteria must also be documented." (Tr. 353.) Plaintiff did not provide any evidence that such clinical criteria was ever documented. Furthermore, the ALJ additionally relied on Dr. Ho's finding that there was "no evidence of lumbar paravertebral muscle spasms or tenderness, joint deformities, crepitus, effusion, or trigger points." (Tr. 26, 405.) Therefore, notwithstanding the two positive workups, the ALJ did not err in finding plaintiff's mixed connective tissue disease to be non-severe.

Plaintiff also argues the ALJ failed to account for plaintiff's fatigue, weakness and tingling

in hands, and swollen fingers. (Tr. 330, 343, 438.) Although plaintiff reported suffering from fatigue, her doctors never attributed the fatigue to her mixed connective tissue disease. (Tr. 343, 406.) In fact, plaintiff reported she suffered from fatigue due to her multiple chemical sensitivity, and the weakness and tingling in plaintiff's hands was reported as a symptom of her concussion. (Tr. 330, 443.) Moreover, plaintiff claimed her fingers were swollen due to an allergic reaction to the dye in ibuprofen. (Tr. 443.) As such, plaintiff's reported symptoms do not demonstrate that her mixed connective tissue disease is a "severe" impairment.

Finally, plaintiff argues the ALJ erred because he concluded plaintiff could do a full range of exertional work with "no proper accommodations for her condition, such as reduced exposure to vibration." Pl.'s Br. 16. However, a review of the record reveals that none of plaintiff's doctors ever indicated plaintiff needed to limit exposure to vibration and there is no evidence plaintiff ever claimed exposure to vibration caused her any problems. None of plaintiff's doctors identified limitations due to plaintiff's mixed connective tissue disease; therefore, her mixed connective tissue disease would have "no more than a minimal effect on [her] ability to work." *Smolen*, 80 F.3d at 1290 (quotations omitted). Thus, the ALJ did not err in his finding that plaintiff's mixed connective tissue disease was not a severe impairment.

### B. Traumatic Brain Injury.

Plaintiff also alleges the ALJ erred in failing to find that her traumatic brain injury was a severe impairment. Pl.'s Br. 15–16. Plaintiff has had up to six concussions over the course of her life. (Tr. 570, 631.) Plaintiff hit her head at a job site in August, 2010, and had to go to the emergency room. (Tr. 338.) In December of 2011, she hit her head again and was diagnosed with a concussion. (Tr. 402.) The Commissioner argues plaintiff's traumatic brain injury was not severe

because the diagnostic imaging was unremarkable. However, "[i]n most cases, damage to the brain from a concussion cannot be seen in tests such as a CT or MRI scan." (Tr. 464.) The Commissioner also argues the ALJ properly relied on the fact that plaintiff's neurological examinations were "essentially unremarkable" and when plaintiff was originally diagnosed with a concussion, it was referred to as mild. (Tr. 25, 332, 336–37). Despite those initial findings, more than two years after her concussion, plaintiff was still experiencing symptoms and she was diagnosed with chronic past concussive encephalopathy and traumatic brain injury. (Tr. 462, 467.) Furthermore, after her concussion, plaintiff struggled to complete even small tasks: she would repeat the same conversations over and over again; she would forget where she was or what she was doing; she became unable to follow instructions, and she experienced dizziness, confusion; and problems concentrating. (Tr. 73, 258, 263, 323–24.) Moreover, plaintiff did poorly on the Trails test with scores that fell "outside the normal range to a significant degree," Dr. Toews noted plaintiff rambled and exhibited a looseness of thought, and Dr. Ho determined that plaintiff had memory loss and concentration problems. (Tr. 406, 413.) Dr. Ho found that plaintiff's traumatic brain injury "may limit her ability to function in the workplace." (Tr. 406.) Plaintiff's traumatic brain injury is more than just a "slight abnormality" with "no more than a minimal effect" on her ability to work. *Smolen*, 80 F.3d at 1290 (internal quotations omitted). Accordingly, the ALJ erred in his finding that plaintiff's traumatic brain injury was not severe.

The Commissioner argues plaintiff failed to identify harm. However, plaintiff correctly noted the ALJ failed to include any accommodations for her traumatic brain injury in the RFC. Pl.'s Br. 15–16. The Commissioner asserts that in his consideration of the RFC limitations, the ALJ "properly did not include discounted testimony or medical evidence." Def.'s Br. 14. As noted

above, however, the ALJ erred in rejecting Dr. Ho's opinion and Mr. Chism's testimony. In light of that evidence—which the ALJ erroneously rejected, and therefore did not consider in crafting the RFC — plaintiff has deficits in memory, concentration, completing tasks, as well as difficulty understanding and following instructions. Therefore, the ALJ's failure to find plaintiff's traumatic brain injury to be "severe" at step two was not harmless error.

### *Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id*. at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876

(9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 191) (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first requisite is met. The ALJ failed to provide legally sufficient reasons to reject the opinion of Dr. Ho and the testimony of Mr. Chism. However, the second requisite is not met, as there are still outstanding issues that must be resolved before a determination of disability can be made. At the administrative hearing, the VE testified that "if sitting [is] at a maximum of four hours and standing and walking is a maximum of three hours, at the bottom of your range, that precludes competitive full time work." (Tr. 83.) Here, when crediting Dr. Ho's opinion as true, plaintiff would arguably be precluded from full time work because Dr. Ho found that plaintiff could sit for a maximum of four hours and stand or walk for a maximum of three to four hours. (Tr. 406.) However, the VE also testified that if plaintiff could stand or walk for four hours the "Office Helper" job could still be "feasible." (Tr. 83.) As such, Dr. Ho's finding that plaintiff could stand or walk for three to four hours leaves some ambiguity as to whether plaintiff would be precluded from full time work. Furthermore, serious doubts remain with regard to Dr. Ho's ultimate conclusions regarding the sitting, standing, and walking limitations. Dr. Ho based those limitations on plaintiff's "fatigue," however, Dr. Ho never explained what caused plaintiff's fatigue. It is therefore not clear how Dr. Ho came to her conclusion, and consequently, whether the conclusion is supported by the record. Therefore, the record is still not fully developed and it is not clear that Plaintiff is, in fact, disabled. Remand for further proceedings is the appropriate remedy. *Treichler*, 775 F3d at 1105. ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

On remand, the ALJ shall: (1) accept Dr. Ho's opinion and incorporate it into the RFC or provide legally sufficient reasons for its rejection; (2) accept Mr. Chism's testimony or provide legally sufficient reasons for discounting it; (3) evaluate plaintiff's obesity as a medically determinable impairment and determine whether it would increase the severity of plaintiff's other impairments; (4) evaluate plaintiff's traumatic brain injury as a severe impairment and incorporate any resulting limitations into the RFC; (5) order an examination of plaintiff to evaluate her impairments as well as determine the cause and assess the extent of her symptoms including, fatigue; (6) order a mental examination of plaintiff to evaluate her mental health and diagnose any mental health impairments; and (7) conduct any additional proceedings as indicated by the results of the foregoing instructions.

*Conclusion*

For these reasons, the decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for further proceedings as directed in this Opinion and Order.

IT IS SO ORDERED

DATED this 7th day of December 2017.

JOHN V. ACOSTA
United States Magistrate Judge